IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK JACOBS,

               Plaintiff,

   v.

CITY OF PHILADELPHIA, et al.,

               Defendants.

CIVIL ACTION
NO. 19-4615

## OPINION

Slomsky, J.                                                    January 20, 2021

## I.   INTRODUCTION

Pro se Plaintiff Derrick Jacobs brings this suit against Defendants City of Philadelphia, City of Philadelphia Police Department, Christine Coulter, and Dennis Wilson (collectively "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Wage Payment Collection Law ("PWPCL").  In an Amended Complaint, Plaintiff alleges that he is entitled to overtime pay for time spent in "on-call" status and that he was retaliated against by Defendants after he filed his original Complaint.

Before the Court is Defendants' Motion to Dismiss for failure to state a claim (Doc. No. 13).  Defendants argue that Plaintiff's claims should be dismissed because he fails to allege that his time spent on-call is compensable under the FLSA; he has not alleged a sufficient temporal connection between his protected activity and the alleged retaliatory acts to support a FLSA retaliation claim; and he cannot state a claim under the PWPCL against Defendants.

The Motion is now ripe for disposition.  For the reasons stated infra, Defendants' Motion to Dismiss will be granted in part and denied in part.

## II.     BACKGROUND

Plaintiff Derrick Jacobs has been employed by Defendant City of Philadelphia as a Detective in the Officer Involved Shooting Investigation ("OISI") Unit since January 1, 2017.  (See Doc. No. 12 ¶¶ 2, 9.)  The OISI Unit investigates all officer-involved shootings in the City and County of Philadelphia that concern Philadelphia Police Officers, Sheriffs, and Correctional Officers, as well as law enforcement personnel from other jurisdictions.  (See id. ¶ 2.)  As a Detective in this Unit, Plaintiff's regular work schedule is 10:00 a.m. to 6:00 p.m., Monday through Friday, and apart from this schedule he "is required to be in on-call status from 6:00 PM to 10:00 AM Monday through Friday and for the full 24 hours each on Saturday and Sunday."  (Id. ¶ 10.)

On October 4, 2019, Plaintiff, acting pro se, filed his initial Complaint alleging violations of the FLSA and state law (see Doc. No. 1 at 3), and on February 5, 2020 Plaintiff filed a First Amended Complaint ("FAC").  (Doc. No. 12.)  In the FAC, Plaintiff pleads in three Counts: (1) a FLSA violation for failure to pay overtime, (2) a FLSA retaliation claim, and (3) a PWPCL violation.  (See id. at 5-6.)

In Count 1, Plaintiff alleges that his time spent in "on-call" status is compensable under the FLSA because "[t]he requirements of the OISI unit for an officer in on call status are so restrictive" that it impinges on Plaintiff's personal time and the activities he can engage in while on-call.  (Id. ¶ 25.)  While on-call, Plaintiff alleges the following:

> [H]e cannot be far from his office as he must be able to promptly respond to a shooting.  Plaintiff is not permitted to drink alcoholic beverages while on call.  As such Plaintiff's time while in on call status severely limits his activities.  He cannot socialize with family and friends who reside too far from his home.  He cannot leave the state and go down the Jersey shore.  He cannot be in any geographic area that would make it too cumbersome to return to his office in a timely fashion.  Plaintiff has been called in to investigate shootings while in on call status.

(Id. ¶ 11.)  By Plaintiff's calculation, Defendants owe him $793,000 for all time spent in on-call status between January 1, 2017 and December 31, 2018.  (Id. ¶¶ 17-18.)  Plaintiff also points to

Philadelphia's Civil Service Regulation 6.114-7-1 to further justify why Defendants must compensate him for time spent on-call.[1]  (Id. ¶ 12.)

In Count 2, Plaintiff alleges that Defendants also violated the FLSA anti-retaliation provision when, after they learned about his Complaint filed in October 2019, Plaintiff "experienced retaliation in the form of removal from being an active investigator (being relegated to desk work only), being removed from any contact with the District Attorney's office (any questions about his files are directed to another officer), and being threatened with termination." (Id. ¶ 19.)  Since his removal as an active investigator, Plaintiff avers that he now earns less money since he no longer investigates shootings and "no longer earns overtime for testifying in court for cases he investigates."  (Id. ¶ 20.)  Additionally, Plaintiff notes that Defendant Coulter changed Police Directive rules, expanding the OISI Unit's responsibilities from investigating officer involved shootings to investigating "**ALL** in custody deaths, suicides and attempted suicides."[2] (Id. ¶ 22) (emphasis in original).

---

[1]    Philadelphia Civil Service Regulation 6.114-7-1 reads as follows:

On-Call Time.  Employees in positions below the rank of Prosecution Detective Sergeant, who are required to be available by remaining at work or by remaining at home subject to call for work at times other than during normal working hours, in accordance with a pre-arranged authorized schedule, shall be in an on-call capacity. All hours served in such a capacity will be compensated as regular hours of work.

Employees serving in an on-call capacity shall be compensated at one and one-half (1-1/2) times the regular rate of pay for all hours served in excess of the regular forty (40) hour work week.

City of Philadelphia Officer of Human Resources, Philadelphia Civil Service Regulations, https://www.phila.gov/personnel/webregs/reg06.htm (last updated Oct. 13, 2020).

[2]    Plaintiff avers that, as to Count 1 of the FAC, this change to the Police Directive rules "further restrict[ed] [his] activities in on call status."  (Doc. No. 12 ¶ 22.)

In Count 3, Plaintiff alleges that Defendants violated the PWPCL for failing to pay him overtime for time spent on-call.  (Id. ¶¶ 31-32.)  Because the PWPCL defines wages as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation[,]" and because "Plaintiff's wages remain unpaid for more than sixty (60) days beyond the date making such wages payable[] and no good faith contest or dispute of any wage claim exists," Plaintiff claims Defendants are required to pay his on-call overtime wages as well as "liquidated damages [in] an amount equal to 25 percent of the total wages due and owing." (Id. ¶¶ 30-32.)

On February 20, 2020, Defendants filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (Doc. No. 13.)  In the Motion, Defendants argue that Plaintiff fails to plead sufficient facts to prove that his on-call time is compensable under the FLSA.  (See id. at 5.)  Pointing to a four-factor test established by the Third Circuit in Ingram v. County Of Bucks, 144 F.3d 265 (3d Cir. 1998) to determine whether on-call time is compensable, Defendants argue that Plaintiff cannot "succeed under the Third Circuit's test[]" as he has not alleged facts proving "that his personal activities were so restricted as to render his on-call time compensable[.]"  (Id. at 4-5.)  Defendants also assert that Plaintiff failed to plead sufficient facts for a FLSA retaliation claim because he failed to show that "the temporal proximity between his protected activity"—filing the complaint—"and the retaliatory actions was unusually suggestive." (Id. at 7.)  "In providing only an order of events without a specific timeline of those events, Plaintiff perpetuates a logical fallacy" which Defendants contend "is insufficient to state a plausible claim of relief for retaliation."  (Id. at 8.)

Lastly, Defendants argue that Plaintiff cannot bring a PWPCL claim against them because the City of Philadelphia is a municipal corporation, and municipal corporations are not included

4

in the definition of "employer" under the PWPCL.[3]  (See id. at 6.)  "Plaintiff admits that he is employed by the City of Philadelphia[]" and "does not allege that the individual defendants employed him[;]" therefore, Defendants contend that Count 3 should be dismissed because the PWPCL does not apply to the City of Philadelphia.  (Id.)

On March 18, 2020, Plaintiff filed a Response in Opposition to Defendants' Motion in which he maintains he pled sufficient facts to support his claims under the FLSA and the PWPCL. (Doc. No. 14 at 7-9.)  Regarding Count 1, Plaintiff realleges that Defendants "omitted the material fact" that Philadelphia Civil Service Regulations mandate "overtime pay while in on-call status." (Id. at 2 ¶ 3.)  As to Count 2, Plaintiff avers that, even though he "did not provide the exact date of the retaliatory action by [Defendants] against him," the FAC "clearly states that action was taken against him once they learned of the filed complaint."  (Id. at 4 ¶¶ 10-11.)

Regarding Count 3, Plaintiff alleges that the City of Philadelphia is an employer under the PWPCL because 1 Pa.C.S. § 1991 of the Statutory Construction Act defines "person" as "a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person."  (Id. at 8.)  Since the PWPCL was enacted after the Statutory Construction Act and includes persons in their definition of "employer," see 43 P.S. § 260.2a, Plaintiff argues that "Defendant City of Philadelphia is an employer" under the PWPCL.  (Id. at 9.)

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that

---

[3]  "'Employer.' Includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."  43 P.S. § 260.2a.

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.     ANALYSIS

As noted in the FAC, Plaintiff alleges three claims: (1) a FLSA violation for failure to pay overtime, (2) a FLSA retaliation claim, and (3) a PWPCL violation.  (See Doc. No. 12 at 5-6.)  In their Motion, Defendants seek dismissal of all claims because Plaintiff "failed to provide sufficient factual support" to sustain Count 1, "failed to allege sufficient temporal proximity between his protected activity and any retaliatory action" to support Count 2, and because the "City of Philadelphia is immune from Pennsylvania Wage Payment and Collection Law claims" on Count 3.  (Doc. No. 13 at 1.)  Each claim is discussed in turn below.

### A.  Count 1: FLSA Violation for Failure to Pay Overtime While On-Call

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).  It mandates that employers "pay one and one-half times the employe[e]'s regular wage for hours worked in excess of forty hours per week[.]" Davis v. Abington Memorial Hosp., 765 F.3d 236, 241 (3d Cir. 2014); 29 U.S.C. § 207(a).  If an employer fails to compensate its employee for working overtime, the employee can recover under the FLSA if he "prove[s] that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." Davis, 765 F.3d at 241 (citations omitted).

In Davis v. Abington Memorial Hospital, the Third Circuit Court of Appeals held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of

work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours." Id. at 242 (alteration in original) (quoting Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013)).  The employee need not "identify the exact dates and times that she worked overtime."  Id. at 243.  "[A] plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice." Id. (emphasis in original).

Here, Plaintiff alleges that Defendants violated the FLSA by refusing to compensate him while he was in on-call status.  (See Doc. No. 12 ¶¶ 13, 16.)  As a Detective in the OISI Unit, Plaintiff's "daily work schedule is Monday through Friday from 10:00 AM to 6:00 PM" and he is "required to be in on-call status from 6:00 PM to 10:00 AM Monday through Friday and for the full 24 hours each on Saturday and Sunday."  (Id. ¶ 10.)  Plaintiff avers that he "regularly works 40 hours per week," and "has been called in to investigate shootings while in on call status."  (Id. ¶¶ 10-11.)  Because "regularly" and "typically" are synonymous, Plaintiff's allegations regarding hours worked suffice under Davis.

But Plaintiff does not seek overtime pay only for the times he was "called in to investigate shootings while in on call status."  (Id. ¶ 11.)  Rather, he alleges that he is owed overtime pay for all time spent in on-call status. (Id. ¶ 17.)  He estimates that he is owed roughly $793,000 in overtime pay for: "16 hours per weekday Monday through Friday of on call overtime from January 1, 2017 to present" and "24 hours per day (Saturday and Sunday) for weekend on call overtime from January 1, 2017 to present."  (Id. ¶¶ 17-18.)

In Ingram v. County of Bucks, the Third Circuit, in deciding a motion for summary judgment, addressed whether time spent on-call is compensable under the FLSA.  144 F.3d 265,

268 (3d Cir. 1998). They noted that "[t]he Department of Labor promulgated regulations stating that on-call time is compensable if the employee . . . finds his time on-call away from the employer's premises is so restricted that it interferes with personal pursuits[,]"[4] and that the Department's regulation of the FLSA is "entitled to substantial deference." Id. (citations omitted).

The court set forth four factors to consider in determining whether time spent on-call is compensable: (1) "whether the employee may carry a beeper or leave home;" (2) "the frequency of calls and the nature of the employer's demands;" (3) "the employee's ability to maintain a flexible on-call schedule and switch on-call shifts;" and (4) "whether the employee actually engaged in personal activities during on-call time." Id. "If these factors reveal onerous on-call policies and significant interference with the employee's personal life," the factors weigh in favor of compensation for time spent in on-call status. Id.

Courts in this District that have addressed this issue in deciding a motion to dismiss are split on whether to apply the Ingram factors at the pleading stage. Two courts that applied Ingram found the plaintiff did not state a claim. See Everett v. Maternal Child Consortium, LLC, No. 18-746, 2018 WL 3374763, at *4 (E.D. Pa. July 10, 2018) ("Plaintiff's single allegation that she

---

[4]    The full text of the relevant regulation states:

> An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, an employee in fire protection activities has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(d).

'performed compensable on-call work' is not enough to state a claim under <u>Ingram</u>.");  <u>Parker v.</u>
<u>4247 FX, Inc.</u>, No. 16-2710, 2017 WL 2002794, at *7 (E.D. Pa. May 12, 2017) (internal quotations
omitted) ("Plaintiffs' Amended Complaint includes conclusory allegations, claiming Plaintiff was
'on call' literally '24/7/365[]' [and] . . . he was 'on a short leash,' perpetually 'chained to the Desk[]'
. . . however, Plaintiff concedes that he was 'free to conduct some personal business during his on-
call time.'").  Conversely, two courts that did not apply <u>Ingram</u> held that the plaintiff did state a
plausible claim, explaining that applying <u>Ingram</u> at the pleading stage was premature since
discovery would glean more information on the four factors.  <u>See</u> <u>Razak v. Uber Techs., Inc.</u>, No.
16-573, 2016 WL 7241795, at *6 (E.D. Pa. Dec. 14, 2016) ("The <u>Ingram</u> factors are relevant to
the Plaintiffs' burden of proof that they were 'working' while on-call.  However, the Court will not
require Plaintiffs to plead with any more specificity than they already have . . . . Details . . . will
be learned through discovery."); <u>Bansept v. G & M Auto.</u>, 434 F. Supp. 3d 253, 259 (E.D. Pa.
2020) ("Through discovery, Plaintiff will have the opportunity to establish that his on-call time off
premises is compensable.").

        Here, this Court agrees with <u>Razak</u> and <u>Bansept</u> and finds that Plaintiff has alleged
plausible facts to state a claim under the FLSA.  Unlike the plaintiffs in <u>Everett</u> and <u>Parker</u>, Plaintiff
here did not merely plead that he "performed on-call work"[5] or was "on call literally 24/7/365."[6]
Rather, Plaintiff alleged the following:

        When Plaintiff is in on call status, he cannot be far from his office as he must be
        able to promptly respond to a shooting.  Plaintiff is not permitted to drink alcoholic
        beverages while on call.  As such Plaintiff's time while in on call status severely
        limits his activities.  He cannot socialize with family and friends who reside too far
        from his home.  He cannot leave the state and go down the Jersey shore.  He cannot

---

5    <u>Everett v. Maternal Child Consortium, LLC</u>, No. 18-746, 2018 WL 3374763, at *4 (E.D. Pa.
July 10, 2018).

6    <u>Parker v. 4247 FX, Inc.</u>, No. 16-2710, 2017 WL 2002794, at *7 (E.D. Pa. May 12, 2017).

be in any geographic area that would make it too cumbersome to return to his office in a timely fashion.  Plaintiff has been called in to investigate shootings while in on call status.

(Doc. No. 12 ¶ 11.)  Plaintiff further alleged that, after filing suit, Defendant Coulter changed Police Directive rules, expanding the OISI Unit's responsibilities from investigating officer involved shootings to investigating "**ALL** in custody deaths, suicides and attempted suicides." (Id. ¶ 22) (emphasis in original).  According to Plaintiff, "[t]his change further restricts [his] activities in on call status."  (Id.)

At this stage, Plaintiff has pled plausible and sufficient facts that state a claim under the FLSA because he has provided examples of how the on-call policies interfere with his personal life.  See Ingram, 144 F.3d at 268.  Whether Plaintiff can establish that he is entitled to compensation for all time spent in on-call status is a question to be answered after discovery, at which point the Ingram factors will be considered in more detail, if a motion for summary judgment is filed.  See Razak, 2016 WL 7241795, at *6; Bansept, 434 F. Supp. 3d at 259.  Therefore, Defendants' Motion to Dismiss as to Count 1 will be denied.

## B.  Count 2: FLSA Retaliation

The FLSA forbids employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA.  29 U.S.C. § 215(a)(3).  This anti-retaliatory provision was "designed to encourage employees to report suspected wage and hour violations by their employers[]" and should be liberally construed.  Brock v. Richardson, 812 F.2d 121, 123-24 (3d Cir. 1987).

To set forth a prima facie case of FLSA retaliation, a plaintiff must prove that he (1) "engaged in protected activity, (2) the employer took an adverse employment action against him,

and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." Jones v. Amerihealth Caritas, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) (quoting Scholly v. JMK Plastering, Inc., No. 07–4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008)).  "At this early stage, however, Plaintiffs need only plead facts sufficient to raise the inference that they can establish the elements of a prima facie case of retaliation." Mackereth v. Kooma, Inc., No. 14-04824, 2015 WL 2337273, at *11 (E.D. Pa. May 14, 2015).

In the FAC, Plaintiff alleges the following:

19.  Since filing his original complaint in fall 2019 and his employer learning of his complaint, Plaintiff has experienced retaliation in the form of removal from being an active investigator (being relegated to desk work only), being removed from any contact with the District Attorney's office (any questions about his files are directed to another officer), and being threatened with termination.

20.  It is important to note that when an officer is removed from being an active investigator, the effect is that the officer now earns less money (by nature, active investigations require overtime as shootings do not occur only during normally scheduled work hours), and the investigator no longer earns overtime for testifying in court for cases he investigates.

21.  Deputy Commissioner Dennis Wilson has initiated and ordered a disciplinary investigation against Derrick Jacobs in retaliation for his filing of federal lawsuits.

22. Commissioner Coulter has retaliated against Derrick Jacobs and the other members of the Officer Involved Shooting Investigation Unit by having the Police Directives (rules) changed.

(Doc. No. 12 ¶¶ 19-22.)  These allegations raise a plausible inference that Defendants retaliated against Plaintiff for engaging in protected activity.  Not only does Plaintiff plead specific ways in which he suffered adverse employment action after filing his initial Complaint in 2019, but he also explains how the adverse actions negatively affected his wages and his responsibilities as a Detective in the OISI Unit.

To counter these allegations, Defendants argue that Plaintiff fails to state a claim because he "fails to allege facts from which a factfinder could conclude that the temporal proximity

between his protected activity and the retaliatory actions was unusually suggestive."[7]  (Doc. No. 13 at 7.)  But as previously noted, at this stage in the proceeding Plaintiff need only plead facts that raise an inference of retaliation, which he has done.  See Mackereth, 2015 WL 2337273, at *11.  As such, Plaintiff has stated a plausible claim of retaliation in violation of the FLSA, and Defendants' Motion as to Count 2 will be denied.

---

[7]   Defendants also point to five cases in support of their argument that "unusually close temporal proximity is necessary for [a] factfinder to infer causation in retaliation claims."  (Doc. No. 13 at 7.)  These cases are inapposite here because four of the five cases were decided at the summary judgment stage on a more complete record, not at the motion to dismiss stage.  See LeBoon v. Lancaster Jewish Community Ctr. Ass'n, 503 F.3d 217, 231 (3d Cir. 2007); Thomas v. Town of Hammonton, 351 F.3d 108, 109-10 (3d Cir. 2003); Kier v. F. Lackland & Sons, LLC, 72 F. Supp. 3d 597, 619 (E.D. Pa. 2014); Abdul-Latif v. Cnty. of Lancaster, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014).

The one case that involved a motion to dismiss, Blakney v. City of Phila., 559 F. App'x 183 (3d Cir. 2014), is distinguishable on its facts.  In Blakney, two years prior to filing the retaliation suit, plaintiff filed a race discrimination suit against the City of Philadelphia, his supervisor, and the Director of Human Resources for the Parks and Recreation Department.  See id. at 184.  While litigation was pending, plaintiff voluntarily resigned.  See id.  After the district court granted summary judgment for the City, plaintiff "demand[ed] reinstatement to his prior position or to any available position[,]" but never received a response.  Id.  Because plaintiff was not rehired, he filed a second suit alleging retaliation under Title VII and the Pennsylvania Human Relations Act ("PHRA").  Id. at 185.

In affirming the district court's dismissal of plaintiff's claims, the Third Circuit held that plaintiff "did not plead facts showing that he was subject to retaliatory conduct during the period between" the filing of his first lawsuit and his voluntary resignation, noting that after his resignation, "the only negative conduct Blakney experienced at the hand of the Parks and Recreation Department was passive at best—they ignored his reinstatement requests."  Id. at 186.  Moreover, "[t]he City's decisions to ignore Blakney's reinstatement requests and fill the position with another employee were neutral acts that do not create an inference of antagonism."  Id. at 187.  It is clear that, unlike the facts in this case, the plaintiff in Blakney did not plausibly allege that his employer retaliated against him by choosing not to rehire him.  Conversely, here Plaintiff Jacobs alleges numerous adverse actions taken by Defendants after he filed his initial Complaint, as well as how those actions affected his employment.

### C.  Count 3: PWPCL Violation

The Pennsylvania Wage Payment and Collection Law ("PWPCL"), codified in 43 P.S. § 260.1 et seq., "provides a vehicle through which an[] employee may collect wages owed to him or her from a delinquent employer." Gallaher v. Goldsmith, 213 F. Supp. 2d 496, 498 (E.D. Pa. 2002). The Law defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth . . . ." § 260.2a.  Municipal entities are not included in this definition, and Pennsylvania "has exempted municipal entities from the [P]WPCL since it first confronted this issue in 1991 . . . ." Carstetter v. Adams Cnty. Transit Auth., No. 1:06–1993, 2008 WL 2704596, at *14 (M.D. Pa. July 8, 2008); see also Scott v. Philadelphia Hous. Auth., No. 10-4723, 2011 WL 1791095, at *10 (E.D. Pa. May 11, 2011) ("Pennsylvania state courts, the Middle District of Pennsylvania, and the Eastern District of Pennsylvania[] have consistently held that the [P]WPCL does not apply to municipal corporations[.]").  Under Pennsylvania law, the City of Philadelphia is recognized as a municipal corporation.  See 53 P.S. §§ 101, 16251, 16255.

Defendants correctly point out in their Motion that the PWPCL does not apply to municipal corporations such as the City of Philadelphia.  (See Doc. No. 13 at 6.)  While Plaintiff only focuses on the PWPCL's definition of "wages" in the FAC to argue that he is entitled to collect wages, (see Doc. No. 12 ¶¶ 30-32), in his Response in Opposition to Defendants' Motion he relies upon a definition in the Statutory Construction Act, 1 Pa.C.S. § 1991, to argue that the City of Philadelphia is a "person" rather than a municipal corporation.[8]  (See Doc. No. 14 ¶ 7.)  Because he avers that the City is a "person," he argues that the PWPCL should apply to Defendants.  (See id. ¶ 8.)

---

[8]   As previously noted, the statute defines "person" as "a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person."  1 Pa.C.S. § 1991.

Section 1991 of the Statutory Construction Act states that its definitions apply "unless the context clearly states otherwise[.]"  1 Pa.C.S. § 1991.  The City of Philadelphia is recognized as a municipal corporation under separate Pennsylvania statutes;[9] therefore, the definition in section 1991 does not apply here.  See Siciliano v. Mueller, 149 A.3d 863, 865 (Pa. Super. 2016) ("[W]here terms are not defined in statutes, Statutory Construction Act requires words and phrases to be construed by their common and approved usages.").  Accordingly, Defendants' Motion as to Count 3 will be granted because Plaintiff cannot state a claim against Defendants under the PWPCL.[10]

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 13) will be denied as to the FLSA claims (Counts 1 and 2) and granted as to the PWPCL claim (Count 3).  An appropriate Order follows.

---

[9]   See 53 P.S. §§ 101, 16251, 16255.

[10]   Because municipal corporations—like Defendant City of Philadelphia—cannot be sued under the PWPCL, see Scott v. Philadelphia Hous. Auth., No. 10-4723, 2011 WL 1791095, at *10 (E.D. Pa. May 11, 2011), Defendant City of Philadelphia Police Department and its employees, Defendants Coulter and Wilson, also cannot be sued.  They are agents or officers of Defendant City of Philadelphia, and the PWPCL only applies to "any agent or officer" of an employer subject to liability under the statute.  See 43 P.S. § 260.2a.

15